John Sexton & Company, Appellee, v. Library Plaza Hotel Corporation, Appellant.

Gen. No. 36,053.

Opinion filed March 29, 1933. Rehearing denied April 13, 1933.

ROSENTHAL, HAMILL & WORMSER, for appellant; WILLARD L. KING and GEORGE W. GALE, of counsel.

BLUM & JACOBSON, for appellee; EDWARD M. KEATING and REUBEN S. FLACKS, of counsel.

MR. PRESIDING JUSTICE WILSON delivered the opinion of the court.

The plaintiff, John Sexton & Co., a corporation, brought its action against the Library Plaza Hotel Corporation, defendant, to recover for goods and merchandise sold and delivered. The defendant denies that it ever ordered or received the goods in question. There appears to be a number of parties involved in the transactions bearing similar names. The goods delivered consisted of foodstuffs and similar supplies destined for use in a cafe or cafeteria situated at 1633-1635 Orrington avenue, Evanston, Illinois. The building in which the cafe or cafeteria was located was owned by the Library Plaza Hotel Building Corporation and was situated at the corner of Orrington

avenue and Church street. The cafe occupied part of the basement and first floor of the building with its entrance on Orrington avenue and was known as the Library Plaza Cafeteria Corporation. The remainder of the building was occupied by the Library Plaza Hotel Corporation, under a lease, with its entrance at 701 Church street. There was also an inner entrance through the hotel to the cafeteria.

In order to avoid confusion we will refer to the Library Plaza Hotel Building Corporation as the "Building Company," the Library Plaza Hotel Corporation as the "Hotel" and the Library Plaza Cafeteria Corporation as the "Cafeteria."

The Cafeteria was originally operated by one Carlson, under a lease from the Building Company. Carlson was also president of the Building Company and later president of the Hotel. He began purchasing goods from plaintiff in 1922 and the account was carried in his name until sometime in 1924 or 1925, at which time plaintiff was advised that Carlson was not the owner of the Cafeteria but that it belonged to the Building Company and the goods were thereafter billed to that company. September 15, 1926, the building Company leased the premises occupied by the Cafeteria to Carlson. In 1928 this lease was assigned by the Building Company to the Hotel. Carlson, in turn, in 1929, assigned the lease to the Cafeteria, with the consent of the Hotel.

The account sued upon is from July 2, 1929, to October 15, 1929. The plaintiff was beginning to feel that the account was insecure and on August 2, 1929, it procured from Carlson a guarantee of the account. This instrument guaranteed plaintiff the prompt payment for any merchandise delivered by plaintiff to the order of the Hotel, Orrington Plaza Building Corporation, or the Indianwood Golf Club. It is insisted that as Carlson was president of the "Hotel" he expressly

recognized the liability of the Hotel. On the other hand it may be argued with equal force that the plaintiff was looking to Carlson and was not concerned about who was liable for the account. The account was carried on the books of plaintiff in the name of the Building Company. The statements from time to time were so made out to the Building Company. The delivery receipts show they were for goods delivered to the Hotel. The goods were delivered to the Cafeteria at Orrington avenue, the premises of the Cafeteria, and there receipted for by an employee of the Cafeteria.

At no time did the plaintiff ever receive a check from the Hotel. It did, however, receive and acknowledge payment from the Building Company and from Carlson. From July 23, 1929, to November 12, 1929, it received checks for merchandise amounting to close to $6,000 signed Cafeteria by Carlson, its president.

It is insisted that the Hotel knew that the delivery slips were made out to the Hotel because of the fact that Carlson was its president. Carlson had no interest in the Hotel other than a qualifying share of stock. His interest in the Cafeteria Company does not appear, but from the record it is a fair inference that he was in fact the sole owner. Consequently, his interest in this litigation would be adverse to that of the Hotel. Notice to a principal is often ineffective where their interests are adverse. He was also president of the Building Company and of the Cafeteria. Confusion often results from the operation of various related corporations especially where names similar in sound are used. It cannot be said, however, that this fact alone creates a joint liability. There must be something more, such as a commingling of interests, a joint ownership, or a holding out to the world such as would mislead or tend to lull one into a mistake of fact. In the case at bar there was no positive act on the part of the Hotel that had any tendency to mislead. The

Hotel did not hold itself out as the owner of or as interested in the Cafeteria. There was no act by it amounting to a ratification of the acts of Carlson in its operation. There is not sufficient evidence in the record to justify holding the Hotel liable. Carlson himself testified that he operated the Cafeteria. The credit was not extended to the Hotel, but to Carlson. The Building Company issued its checks at times in payment of merchandise but never the Hotel.

We are of the opinion that so far as this record is concerned, the evidence fails to justify the judgment and for that reason the judgment of the superior court is reversed and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

HEBEL and HALL, JJ., concur.